# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| MID-SOUTH METALS, LLC | CIVIL ACTION NO. 24-1150 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CHRISTOPHER RODRIGUEZ, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) filed by Defendant JPMorgan Chase Bank, N.A. ("Chase"). See Record Document 13. Plaintiff Mid-South Metals, LLC ("Mid-South") opposed the motion and Chase replied. See Record Documents 17 & 18. For the reasons stated below, Chase's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) (Record Document 13) is **GRANTED**.

## BACKGROUND

On July 3, 2023, Mid-South issued check number 45549 from its account with Regions Bank for $171,755.57. See Record Document 1-1 at ¶¶ 4, 6. After it was put in the mail, the check was "physically intercepted, copied, counterfeited, and reprinted on a different check stock." Id. at ¶ 6-7. On July 19, 2023, the counterfeit check was deposited in an account bearing the name Christopher Rodriguez ("Rodriguez") at Chase. See id. at ¶ 8-9. On July 26, 2023, Mid-South detected the counterfeit check and reported it to Regions Bank and to the Shreveport Police Department. See id. at ¶¶ 12, 15.

On July 27, 2023, Regions Bank emailed Chase to notify it of the counterfeit check and requested Chase both block Rodriguez's access to the funds and return the funds to Regions Bank. See id. at ¶ 13-14. Attached to Regions Bank's email was an indemnification agreement signed by Regions Bank, agreeing to indemnify Chase for any

losses it sustained in complying with its request (the "Indemnification Agreement"). See id. at ¶ 13; see id. at 30-31. On July 28, 2023, the Shreveport Police Department served Chase with a search warrant for Rodriguez's deposit account. See id. at ¶ 28. At no point did Chase take any action to freeze Rodriguez's account or otherwise prevent Rodriguez from accessing the funds. See id. at ¶¶ 27-29. Between July 28 and August 3, 2023, Rodriguez withdrew and transferred the funds in his Chase account. See id. at ¶¶ 16-17. On August 4, 2023, Chase denied Regions Bank's request "because there were 'no funds available.'" Id. at ¶ 18.

On June 11, 2024, Mid-South filed suit against Rodriguez in the 1st Judicial District Court in Caddo Parish, Louisiana for conversion. See id. at 9-11. Shortly thereafter, Mid-South filed an Amended Petition, naming Chase as a defendant for "negligence and for failure to recognize Plaintiff's adverse claims to the funds on deposit in Defendant Rodriguez's deposit accounts." Id. at ¶ 25. Chase removed the case to federal court pursuant to diversity jurisdiction. See Record Document 1.

In Chase's Motion to Dismiss, Chase argues that the Uniform Commercial Code, as adopted by the state of Louisiana (the "UCC"), displaces any claims brought against it by Mid-South. See Record Document 13. It argues in the alternative that Mid-South fails to state a viable claim of negligence, conversion, or breach of contract, and that it was under no statutory obligation to recognize any adverse claim to Rodriguez's funds. See id. Mid-South opposes the motion, arguing that its claims of negligence and under Louisiana Revised Statute 6:315(A) (the "Adverse Claim Statute") are not displaced by the UCC because they are based on Chase's failure to recognize its claims to the funds, not its acceptance of the counterfeit check. See Record Document 17. On reply, Chase

again argues that the UCC prohibits Mid-South's claims and that Mid-South did not meet the statutory requirements of the Adverse Claim Statute. See Record Document 18.

**LAW & ANALYSIS**

I.     **Legal Standard**

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief and requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To determine whether a complaint is adequate under Rule 8(a)(2), courts now apply the "plausibility" standard established in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and its progeny. Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555-56. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

Additionally, courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678. However, courts do not have to accept legal conclusions as fact. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive. See id. at 678-79. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. In deciding on a Rule 12(b)(6) motion to dismiss, courts generally "may not go outside the pleadings." Colle v. Brazos County, 981 F.2d 237, 243 (5th Cir. 1993). However, courts may consider

a document that is attached to a motion to dismiss, referred to in the pleadings, and central to the party's claim. See In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007).

## II. Analysis

Mid-South brings claims for negligence and under Louisiana's Adverse Claim Statute. See Record Document 1-1 at ¶ 25. Mid-South argues specifically that Chase was negligent for failing to take action to freeze Rodriguez's funds in response to its communications, claims to the fund, and the Indemnification Agreement. See Record Document 17.[1] Chase's primary argument for dismissal is that the UCC prohibits Mid-South (the drawer of the check) from bringing any claim against Chase (the depository bank). See Record Document 13.

Louisiana Revised Statute 10:1-103 provides that Louisiana UCC provisions should be "liberally construed and applied to promote [the UCC's] underlying purposes and policies."[2] La. R.S. 10:1-103(a). While other Louisiana law can supplement the UCC, if there is any conflict or inconsistency with the UCC, the UCC governs. See La. R.S. 10:1-103(b), cmt. 2. "Louisiana UCC preemption is fairly expansive, encompassing preemption of any additional claim that is inconsistent not only with the text of the UCC, but also with its overarching 'purposes and policies.'" Brandt Dealer Servs. LLC v. Hancock Whitney Bank, No. 24-CV-2264, 2025 WL 105576, at *8 (E.D. La. Jan. 15,

---

[1] Chase's Motion to Dismiss defends against potential conversion and breach of contract claims. However, Mid-South's opposition brief makes clear that it did not bring any such claims against Chase. See Record Document 17 at 11.

[2] Louisiana Revised Statutes Title 10 contains all portions of the UCC adopted by Louisiana.

2025). Chase points to two sections of the UCC that may address the transaction at issue: UCC Articles 3 and 4.

### A. UCC Article 3

Chase argues that UCC Article 3 displaces Mid-South's claims because a negotiable instrument is at issue. See Record Document 13-1 at 10-11. UCC Article 3 applies to "negotiable instruments," including checks. La. R.S. 10:3-102. "It does not apply to money . . . ." Id. Common law claims that are displaced by the UCC include claims for "negligent acceptance, payment, or presentment of a forged check." See Innovative Hosp. Sys., L.L.C. v. Abe's Inc., 2010-509 (La. App. 3d Cir. 12/8/10), 52 So. 3d 313, 316. These common law claims are displaced by the UCC because "the UCC is intended to be an exclusive means of determining the rights, duties, and liabilities of the affected parties in any situation covered by the applicable provisions of the UCC." Ducote v. Whitney Nat'l Bank, 16-574 (La. App. 5 Cir. 2/22/17), 212 So. 3d 729, 736, writ denied, 2017-0522 (La. 5/26/17), 221 So. 3d 860.

Mid-South does not allege that Chase was negligent for its acceptance, payment, or presentment of the forged check; instead, it argues that Chase is liable for negligently failing to freeze Rodriguez's funds. See Record Document 17 at 11-12. In other words, Mid-South challenges Chase's overall dealings with Rodriguez's Chase account, rather than its handling of the specific check at issue. This is particularly significant in the context of UCC Article 3, which is applicable to checks but not money. Indeed, it distinguishes Mid-South's claims from those by other plaintiffs claiming a bank was negligent for accepting or cashing a counterfeit check. See, e.g., Innovative Hosp. Sys., L.L.C., 52 So.

3d at 315. The Court is unconvinced that Mid-South's claims are covered by UCC Article 3.

### B. UCC Article 4

Chase also argues that UCC Article 4 governs because it provides Mid-South with a remedy against its own bank. See Record Document 13-1 at 11. UCC Article 4 generally governs "[t]he liability of a bank for action or non-action with respect to an item handled by it for purposes of presentment, payment, or collection." La. R.S. 10:4-102. Louisiana Revised Statute 10:4-401 provides that a bank can only charge a customer for "an item that is properly payable," meaning that it is "authorized by the customer." La. R.S. 10:4-401(a). Banks are obligated to provide their customers with a copy of their bank statements so that customers can use reasonable care to examine those statements and report unauthorized payments with reasonable promptness. See La. R.S. 10:4-406; see also 9 C.J.S. Banks and Banking § 439 ("A bank cannot charge its customer's account, and must recredit the account, where the bank pays an item with a purported drawer's signature which is unauthorized, as where such signature is forged.").

The Fifth Circuit has previously explained how liability is allocated under UCC Article 4 in the case of forged and counterfeit checks[3]:

> In general, the drawee bank is strictly liable to its customer drawer for payment of either a forged check or a check containing a forged indorsement. In the case of a forged indorsement, the drawee generally may pass liability back through the collection chain to the party who took from the forger and, of course, to the forger himself if available. . . .
>
> A check bearing a forged indorsement . . . is not "properly payable". . . . Regardless of the care exercised, a drawee bank is with few exceptions

---

[3] While the relevant provisions of the Louisiana UCC have been amended since Perini Corp., those amendments are not relevant to the Court's analysis here.

6

> liable to its drawer customer for payment of such a check. See [UCC §] 4-401.
>
> Upon recrediting the drawer's account after payment over a forged indorsement, the drawee will seek redress against prior parties in the collection chain through an action for breach of the statutory warranty of good title. Each person who obtains payment of a check from the drawee and each prior transferor warrants to the party who in good faith pays the check that he has good title to the instrument. [UCC §§] 3-417(1)(a), 4-207(1)(a). . . .The drawee may therefore bring a breach of warranty action against a person who presented a check bearing a forged indorsement. These warranty actions will continue up the collection chain to the party who took from the forger or to the forger himself.
>
> Additionally, payment of a check bearing a forged indorsement constitutes conversion under [§] 3-419(1)(c). This conversion action at least provides the check's "true owner," the payee or indorsee from whom it was stolen and whose name was falsely indorsed, direct relief from the drawee. . . . Without the conversion action the true owner would have to seek payment from the drawer, who might be overcautious and unaware of his right to force the drawee to recredit his account for any payment over a forged indorsement.
>
> The danger created by forged indorsements is that the party designated by the instrument as entitled to its proceeds will appear with a claim to those proceeds after payment has been made to the malefactor. The statutory actions for improper payment, conversion, and breach of warranty of good title combine, however inartfully, to safeguard the drawer against double liability and to assure the payee of payment. The loss falls on the party who took the check from the forger, or on the forger himself.

Perini Corp. v. First Nat. Bank of Habersham Cnty., 553 F.2d 398, 403-04 (5th Cir. 1977).

      Chase argues that UCC Article 4 "provides Mid-South with a remedy under La. R.S. 10:4-401 and 4-406, whereby Mid-South can demand its own bank . . . recredit its account in the amount of the check at issue." Record Document 13-1 at 11. Mid-South's opposition brief does not refute or otherwise address the availability of this remedy. The Court finds that the UCC offers Mid-South a remedy through a recrediting of its account from the drawee bank, that is, Regions Bank. To the extent that any other recovery may be available from other parties who obtained payment of the check, that recovery would

7

be available to the drawee bank. So, while the UCC dictates that the loss will ultimately "fall[] on the party who took the check from the forger, or on the forger himself," any remedy available to Mid-South would be through its own bank. See id. at 404; Innovative Hosp. Sys., LLC, 52 So. 3d at 317-18 ("[T]he remedy for payment of a fraudulently altered instrument lies with the payor bank or drawee, not with the drawer.").

This UCC remedy displaces Mid-South's claims of negligence and under the Adverse Claim Statute. See Ducote, 212 So. 2d at 736 ("Because the UCC provides a remedy to plaintiffs for [defendant]'s alleged failure to exercise ordinary care, plaintiffs' claims against [defendant] . . . are barred."). Common law negligence claims are preempted where the UCC offers a remedy. See Ducote, 212 So. 3d at 736. So too are any other claims that would be contrary to the purposes and policies of the UCC—here, any claim by Mid-South under the Adverse Claim Statute.[4] See Brandt Dealer Servs. LLC, 2025 WL 105576, at *8. To the extent that any negligence claim is inconsistent with the

---

[4] Louisiana's Adverse Claim statute provides:

> Notice to any bank of an adverse claim, including an adverse claim of ownership of, right to control, or access to funds, to a deposit standing on the books of the bank to the credit of any person does not require the bank to recognize the adverse claimant unless the notice is given pursuant to either a restraining order, injunction, or other appropriate process against the bank in an action instituted by the adverse claimant wherein the person to whose credit the deposit stands is made a party and served with summons, *or* the adverse claimant has executed to the bank, in form and with sureties acceptable to it, a bond indemnifying the bank against any liability, loss, damage, costs, and expenses on account of payment or of dishonor of the check or other order of the person to whose credit the deposit stands.

La. R.S. 6:315(a) (emphasis added). This means a party can put a bank on notice of an adverse claim in one of two ways: (1) through legal process wherein the party who has credit for the deposit is joined as a party; or (2) through a bond "in form and with sureties acceptable to" the bank agreeing to indemnify it. See id.

8

UCC's remedial scheme for this type of transaction, so too is any claim under the Adverse Claim Statute.

This is not to say that the Adverse Claim Statute is superfluous or otherwise inapplicable to situations such as this. It is to say that, because of the UCC's remedial scheme, Mid-South is not the proper party to bring any such claim. The Adverse Claim Statute would apply to a claim brought by a proper party against a defendant that did not properly recognize the adverse claim. This analysis is supported by the Indemnity Agreement sent to Chase. The Indemnity Agreement requests the funds be returned to Regions Bank and releases Chase from liability to Regions Bank. See Record Document 1-1 at 30-31. The Indemnity Agreement does not mention Mid-South except for its assertion that the funds at issue originated from its customer and the customer's account number. This suggests that the actual party in interest in retrieving the funds was Regions Bank, not Mid-South.

In short, Mid-South's claims are displaced by UCC Article 4 and Mid-South thus fails to state a claim on which relief can be granted.

## CONCLUSION

Based on the reasons explained above,

**IT IS ORDERED** that Chase's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) (Record Document 13) is **GRANTED**. Mid-South's claims against Chase are **DISMISSED WITH PREJUDICE**.

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 3rd day of April, 2025.

_____
JUDGE S. MAURICE HICKS, JR.
UNITED STATES DISTRICT COURT